UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Breanna Jade Beltran,

          Plaintiff,

    v.

Commissioner of Social Security,

          Defendants.

No.  1:25-cv-01081-GSA

**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSION OF SOCIAL SECURITY**

(ECF No. 14, 16)

## I.    <u>Introduction</u>

Plaintiff Breanna Jade Beltran seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income under Title XVI the Social Security Act.[1]

## II.    <u>Factual and Procedural Background</u>

On August 3, 2022, Plaintiff applied for supplemental security income.  The claims were denied initially on December 19, 2022, and upon reconsideration on April 18, 2023.  The ALJ held a hearing on June 21, 2024 (AR 41–71).  On August 20, 2024, the ALJ issued an unfavorable decision.  AR 18–37.  On April 30, 2025, the Appeals Council denied review (AR 1–5) and this appeal followed.

## III.    <u>The Disability Standard</u>

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 7, 9.

1

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

2

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 3, 2022.  AR 23.

At step two, the ALJ found that Plaintiff had the following severe impairments: autism spectrum disorder; attention deficit hyperactivity disorder ("ADHD"); anxiety disorder; and depressive disorder (20 CFR 416.920(c)).

Additionally at step two, there were a variety of impairments the ALJ considered to be non-severe as they were determined not to cause more than a minimal limitation of physical or mental ability to do basic work activities.  These impairments were: polycystic ovary syndrome; mixed hyperlipidemia; pre-diabetes; irregular menses; acanthosis; nigricans; hyperandrogenism with elevated total and free testosterone as well as an elevated LH/FSH ratio. AR 23–24

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R.

3

Part 404, Subpart P, Appendix 1.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels under 20 C.F.R. 416.967(c), but with the following non-exertional limitations:

> She can understand and remember simple instructions. She can maintain attention, concentration, and pace for simple tasks in 2-hour periods. She can tolerate occasional public and/or coworker contact. She would require tasks that are independent and that do not require more than occasional communication or interactions with others (tasks with communication or interactions are those that require a transaction, responding to questions, supervising others, etc.). She can adapt to a work routine consistent with simple tasks that have occasional changes. She can make simple work-related decisions.  AR 25–31.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a salesclerk.  AR 31.

At step five, relying on the VE's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC Plaintiff could perform the following jobs existing in significant numbers in the national economy: dish washer, laundry worker, assembler, and lumber sorter.  AR 32.  Accordingly, the ALJ concluded that Plaintiff was not disabled since the application date of August 3, 2022.  AR 32.

### V.    Issues Presented

Plaintiff asserts two claims of error: 1- The ALJ failed to properly evaluate the opinions of Drs. Leizer and Pedersen; and 2- The ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony.

#### A.    Medical Opinions

##### 1.    Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough

4

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2.    **Analysis**

#### a.    **Dr. Leizer**

Plaintiff emphasizes Dr. Leizer's opinion that Plaintiff could understand, remember and carry out simple instructions, sustain attention and concentration for <u>short</u> and simple tasks, respond to supervisors, coworkers and work situations, and adapt to changes in a routine work setting. AR 79.

Plaintiff contends that despite purporting to accept Dr. Leizer's opinion as to sustaining attention and concentration for "short, simple tasks" (AR 79) (emphasis added), the RFC did not in fact fully account for that limitation. Specifically, despite the fact that the ALJ specified "simple" tasks in the RFC, Plaintiff contends that the ALJ erred in omitting any limitation regarding "short tasks." (Tr. 25). As such, Plaintiff argues that the RFC assessment was less restrictive than Dr. Leizer's opinion and nor did the ALJ provide any explanation for rejecting Dr. Leizer's opinion as to short tasks rather than just simple tasks. As to this point, Plaintiff provides authority for the proposition that duration and simplicity are distinct concepts. See MSJ at 9. (AR 29, citing Leach 70 F.4th 1251, 1256 (9th Cir. 2023).

However, Plaintiff's argument overlooks that in addition to the restriction for task simplicity, the ALJ separately stated in the RFC that Plaintiff could "maintain attention, concentration, and pace for simple tasks in 2-hour periods." AR 25 (emphasis added). Importantly, this limitation to 2-hour periods did provide distinct restrictions in the RFC to account not only for complexity of tasks, but also for their duration. Plaintiff provides no authority for the proposition that 2-hour increments is not a "short" period.

In sum, the ALJ demonstrated awareness of the distinction between task duration and task complexity and thus committed no error with respect to Dr. Leizer's opinion.

### b.    Dr. Pedersen

Dr. Pedersen, a neuropsychologist, evaluated Plaintiff in July 2022. Plaintiff reported problems with executive function and memory. AR 369. Plaintiff stated that she had trouble focusing, organizing her possessions, and managing her schedule; often felt restless and fidgety; struggled with initiating and completing tasks; had occasional verbal impulsiveness; struggled with social interactions, conversations, and social anxiety. AR 369. Plaintiff also stated that others have called her a "robot" due to lack of emotions (AR 369), and that she had difficulty with sensitivity to sensations such as rough fabric, loud noises and unexpected touching of objects. AR 369.

Plaintiff was diagnosed by Dr. Pedersen with autism spectrum disorder, ADHD and major depressive disorder with anxious distress. (Ex. 2F at 9–10).

The ALJ found Dr. Pedersen's opinions "only somewhat persuasive because they are overly vague and only partially consistent with other evidence, and Dr. Pedersen cited minimal support." AR 30.  The ALJ then highlighted the same handful of examination findings she had highlighted in her analyses of Drs. Leizer's and Telford-Tyler's opinions and concluded that "[t]hese findings indicate that more specific and restrictive limitations are appropriate." AR 30 (emphasis added).

Plaintiff contends that the ALJ failed to articulate which parts of Dr. Pedersen's opinions she accepted, and which parts she rejected (See AR. 30–31). Specifically, Plaintiff contends that the handful of examination findings cited by the ALJ in her analysis were not inconsistent with Dr. Pedersen's opinions, and that the ALJ did not explain how these few findings cast any doubt upon Dr. Pedersen's opinions (Tr. 30). Plaintiff concludes that the ALJ's analysis was too ambiguous for this Court to "trace the path" of her reasoning, and thus remand is warranted for further analysis of Dr. Pedersen's opinion. Id. (citing Kimberli M.S. v. Kijakazi, 2023 WL 2346330, at *8 (S.D. Cal. March 3, 2023) (remanding where ALJ's opinion analysis was too brief to allow for meaningful review)).

However, the ALJ's analysis was reasonably well grounded in the factors of supportability and consistency. Specifically, both the ALJ and Defendant correctly emphasized that Dr. Pedersen's opinion was vague and did not lend itself well to discerning what concrete functional limitations the RFC should have imposed.  Not only was Dr. Pedersen's opinion arguably  vague, but as the ALJ suggested, it was also non-committal in describing the nature and intensity of Plaintiff's limitations.  For example, Dr. Pedersen explained that Plaintiff "may need time and space to be able to respond appropriately," that her conditions "can both impede attention, which will reduce work efficiency a portion of the day" and "make paying attention for sustained periods of time, interacting with others in a social setting, and organizing tasks /schedules somewhat difficult," and "she may struggle with task engagement." AR 434-27, 438 (emphasis added). But even if accepted as credible, these assessments by Dr. Pedersen are not sufficiently specific to establish functional limitations that could have been appropriately included in the RFC.

As to the assertion that Dr. Pedersen's opinion was vague, Plaintiff argues:

> It was also inaccurate to say that Dr. Pedersen's opinions were "overly vague." (Tr. 30). To the contrary, Dr. Pedersen's opinions detailed limitations in numerous very specific categories of work-related functioning (Tr. 367, 424-27, 438). Indeed, the opinion Dr. Pedersen completed in January 2023 was quite specific, finding work performance would be precluded in numerous categories for five percent of the work day, and noting five percent of the work day equated to exactly 24 minutes (Tr. 424). Dr. Pedersen further found that Plaintiff would be absent from work approximately once per month, and would be unable to complete an eight-hour work day approximately once per month (Tr. 425).

MSJ at 11 (Doc. 14) (emphasis added).

Importantly though, as to Dr. Pedersen's opinion regarding an approximate once per month absence from work, the VE testified that this would *not* preclude other jobs existing in significant numbers in the national economy, although two such absences would be work preclusive.  AR 68.

Plaintiff further emphasizes that out of 20 work-related areas of mental functioning, Dr. Pedersen checked the box corresponding to "Category II" for 14 of them.   By way of background, the form[2] addresses 20 areas of mental functioning.  AR 424–26.  The form categorizes the severity of the limitation on a scale from Category I to Category IV.  Plaintiff contends that the ALJ wrongfully rejected Dr. Pedersen's opinion as to the 14 areas for which Dr. Pedersen selected Category II.

These "Mental Residual Functional Capacity Questionnaire[s]" (checkbox forms) often evaluate a claimant's limitations in each area of mental work functioning on a scale from I to IV, as was done here.  Other times they are evaluated qualitatively as being either mild, moderate, marked, or extreme.  The ALJ addresses this at step 2 when performing the psychiatric review technique.   Given that these are both 4 point scales and that the scales are used interchangeably in practice, absent any precedent to the contrary, it seems reasonable and intuitive to find that

---

[2] "MENTAL RESIDUAL FUNCTIONAL CAPACITY QUESTIONNAIRE"

Category II is tantamount to a moderate limitation, and "Moderate mental functional limitations . . . are not per se disabling, nor do they preclude performance of jobs that involve simple, repetitive tasks." (McLaine v. Astrue, 2011 WL 2174895 (C.D. Cal 2011)); see also Rose M. E. v. Saul, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'") (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Ability to do Work-related Activities (Mental)).

In sum, even if Plaintiff would be absent from work 1 day per month, this would not be work preclusive per the VE (AR 68); nor would Plaintiff's category II mental limitations necessarily be work preclusive as arguably they are no more than moderate limitations.

### B.      Subjective Complaints

#### 1.      Applicable Law

An ALJ performs a two-step analysis to determine whether a Plaintifft's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the Claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the Claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the Claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a Claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-

3p at \*10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the Claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the Claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2.    Analysis

The question here is whether the ALJ committed error in evaluating Plaintiff's subjective symptom testimony.   As will be discussed in more detail below, Plaintiff generally had considerable difficulties with social interaction, interpreting social cues, understanding what was asked of her, experiencing and expressing appropriate emotions, making eye contact, tendency to repeat questions and stories multiple times in conversation, mistrust of men stemming from a childhood sexual assault, reactivity to being touched and to other external stimuli, and tactile sensitivity to fabrics.

To begin, the ALJ did not initially describe Plaintiff's subjective complaints accurately. The ALJ stated, "On her function report, the claimant stated she <u>did not</u> have problems getting along with others but that she was nervous around others." AR 24 (citing Ex. 4E).  To the contrary, page 9 of 11 contains check box options for the claimant to indicate which capabilities are affected by her illness, and she checked the box corresponding to "getting along with others." AR 275.

10

Further, in the same function report, Plaintiff reported that she gets "extremely" nervous when people talk to her, doesn't understand what others want her to do (AR 270), rarely goes outside (AR 273), does not regularly go to any places (church, community center, social events, etc) (AR 274), that she only goes places if she has no choice, needs someone to accompany her or she will have a panic attack (AR 274), and doesn't understand people her own age (AR 274).

The ALJ placed emphasis on the fact that Plaintiff presented to providers as being "pleasant and cooperative."  But this is not a significant observation given the controlled setting customarily provided in an examination room, thus being a rather thin basis upon which to conclude that the Plaintiff's social functioning was only moderately limited, as the ALJ found.

Importantly, the same examination notes reflect that Plaintiff: 1-has a tendency toward "sameness;" 2- has restricted and intense interests; 3-has trouble making friends (albeit she had a bit more success in high school); 4- is told she asks weird questions; 5-is told she acts like a "robot;" 6-that she does not feel or express emotions as her peers do; 7-she doesn't make eye contact; 8-she struggles with tactile sensory sensitivities; 9-she switched chairs during the exam due to not liking the fabric; 10-(per her mother) she seems compelled to repeatedly ask the same questions and repeat the same stories over and over, often in a short period of time, which has been a problem since childhood.  AR 369–370.  Plaintiff also reported sexual abuse as a child and an associated fear of men.  AR 440.  Finally, Plaintiff's friend reported Plaintiff would cry before each shift during the brief time Plaintiff was employed at a Target store.

These symptoms, which Plaintiff reported to clinicians and third parties, are more consistent with a marked or extreme limitation in social interaction, as opposed to a moderate limitation as the ALJ concluded.  These symptoms, including those she reported, her mother reported, others observed, and documented by the clinician, cast significant doubt on the RFC insofar as it provides that Plaintiff can tolerate occasional public and coworker contact.  AR 25.

11

The ALJ cited a number of doctor's office visits concluding that "the objective evidence shows her limitations are not quite as severe or persistent as alleged." AR 27. However, subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of Claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). (emphasis added).

The ALJ went on to observe:

The claimant attended her annual routine checkup with Wenjing Liu, M.D., in July 2022. The claimant was taking Lexapro and Wellbutrin and was noted as stable (1F/5). The claimant also saw Harroop Sihota, FNP, and Jagmeet Chaan, M.D., psychiatry. The claimant reported she lacked motivation and felt fatigued and tired throughout the day (3F/14). During the visit, the claimant reported her mood was anxious and irritable. She also reported feeling overwhelmed and depressed. Her attention was fair. She displayed some memory difficulties but had average intelligence (3F/15)

AR 27.

However, this observation is not overly helpful. Displaying fair attention, some memory difficulties and average intelligence, are simply not the type of observations that would undermine the notion that Plaintiff has work-preclusive social difficulties.

The ALJ further observed:

Later in July, the claimant had a neuropsychological evaluation with Heather Pedersen, Ph. D. The claimant described long-standing problems with executive functions and memory. She stated she had trouble focusing and required great effort to sustain mental engagement with tasks and conversations. She reported that she struggled in school. She also indicated that verbal impulsiveness and difficulty managing her schedule caused significant interpersonal problems. The claimant also described problems with social interactions, nonverbal communication, sensory sensitivities, tendency towards "sameness," and restricted, intense interest (2F/6). The claimant also reported symptoms of depression, adding that she tended to worry quite a bit (2F/7).

AR 27–28. However, the ALJ discounted Plaintiff's subjective reports given objective findings, including:

12

During the evaluation, grooming and hygiene were good. She spoke in a somewhat pressured manner at times. Thoughts were generally logical and linear but she was tangential at times and needed to be redirected to the question at hand. Judgement, reasoning, and insight appeared good. Her mood was euthymic. The claimant was pleasant and cooperative throughout the evaluation (2F/7). Results revealed Average intellectual abilities, with visual-spatial skills, attention, working memory, processing speed, and memory all falling within that range. Language / verbal skills were Average to High Average and executive functions were Low Average to Average (2F/9). Dr. Pedersen stated that the results were indicative of ADHD. She also noted that the claimant and her mother reported symptoms consistent with autism spectrum disorder, which she said appeared relatively mild (2F/9).

But these prototypical mental status examination elements---appearance, speech, thought process, intelligence, and mood—along with the previous observation that Plaintiff was "pleasant and cooperative,"—are not very informative as to how one with Plaintiff's numerous subjective symptoms would respond in a typical work setting.  It's important here to contrast the typical work setting where there would likely be regular if not spontaneous interactions with both a supervisor(s) and co-workers, to that of a controlled interaction with a healthcare provider customarily occurring in an isolated area of an office where the topic and purpose of the interaction would be known by the client beforehand. This difference could be especially magnified with an individual who has trouble engaging with others and who rarely goes outside.

Although there is no contention in the record that Plaintiff was ever unpleasant and uncooperative, experiencing intense internal distress during social interactions is not necessarily inconsistent with simultaneously coming off as pleasant and cooperative.  The ALJ's ensuing discussion is illustrative:

> On June 7, 2023, the claimant had an initial consultation at LiveWell Behavioral Health. She reported the reason for her visit was due to depression and ADHD. She added that she was on the autism spectrum (12F/14). During the session, the claimant was <u>cooperative and pleasant</u>. She had a normal affect and calm, friendly, happy, and relaxed mood. She was attentive, had intact memory, normal judgment, and good insight (12F/15). However, she appeared <u>extremely anxious, as evidenced by shaking hands and sitting at the edge of the couch</u>. She later showed signs of relief, took a deep breath, and laid back on the couch (12F/15).

13

AR 28.

Thus, despite presenting as cooperative and pleasant, the provider importantly noted that Plaintiff displayed extreme anxiousness and physical manifestations thereof. In short, and as pointed out above, "pleasant and cooperative" is not a very meaningful objective finding in light of Plaintiff's subjective symptoms.

As for the remaining exams, the ALJ variously cited intelligence testing describing average intelligence, processing speed, memory, language and verbal skills, and executive functions all being within average range, or low-average at the lowest. However, none of these are in dispute and nor are they especially topical.

As Plaintiff aptly stated: "To be clear, Plaintiff has not alleged a cognitive impairment; rather the bulk of her reported symptoms centered around anxiety with relating to and being around others, problems sustaining attention and concentration, and difficulty handling stressful situations and changes in routine (Tr. 50-51, 58, 266-77)." MSJ at 14.

In sum, neither a "pleasant and cooperative" demeaner, nor an average cognitive function, undermine Plaintiff's contentions about her inability to relate to and interact with others, including her difficulty with adaptation (e.g., obsession with sameness AR 369–370.).

**VI.    Conclusion**

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is warranted for the ALJ to conduct further proceedings consistent with this opinion. See Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (noting that, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or

14

explanation.).

Specifically, in addition to a new hearing and new decision, the ALJ should revisit whether: 1- there is any other basis---besides pleasant/cooperative demeanor and average+ results on cognitive testing---to discount Plaintiff's contentions regarding profoundly limited ability to relate with others or adapt; 2- if not, whether a marked to extreme limitation would be appropriate in adaptation and social interaction when considering paragraph B criteria; and finally, 3- whether the same reported symptoms justify more significant RFC restrictions than "occasional" interaction with co-workers and the public.

## VII.   Order

Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 14) is **GRANTED**.
2. Defendant's cross motion (Doc. 16) is **DENIED.**
3. This action is **REMANDED** to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g).
4. The Clerk of Court is directed to enter judgment in favor of Plaintiff, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 13, 2026**                **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE